In the
# United States District Court
### For the
### Western District of Wisconsin

---

Todd A. Barkow,

      Plaintiff,

                              Case No.    20-cv-1030

    v.

School District of Athens
and Dean Ellenbecker,

      Defendants.

---

# COMPLAINT

---

## I.    NATURE OF ACTION

101.    This is a civil action seeking damages to compensate Plaintiff Todd Barkow for the injuries he sustained when Defendant Dean Ellenbecker intentionally caused the termination of Mr. Barkow's employment with the School District of Athens, Wisconsin, and the Defendant District terminated Mr. Barkow's employment in violation of his federal constitutional rights to Due Process of Law and Equal Protection of the Laws.

## II.     JURISDICTION AND VENUE

### A.     Jurisdiction.

201.     This Court has jurisdiction over this action pursuant to 28 U.S.C.

§1331 (federal question jurisdiction), 28 U.S.C. § 1343(a)(3) (42 U.S.C. § 1983 jurisdiction)

and 28 U.S.C. § 1367 (supplemental jurisdiction over state law claims).

### B.     Venue

202.     The Western District of Wisconsin is the proper venue for this

action because the Plaintiff's claims arose within the geographical boundaries of the

Western District of Wisconsin within the meaning of U.S.C. § 1391(b).

## III.     PARTIES

### A.     Plaintiff

301.     The Plaintiff, Todd A. Barkow, is an adult male resident of the State

of Wisconsin with the capacity to sue and be sued in this Court.

### B.     Defendants

302.     Defendant School District of Athens is a Wisconsin school district

with the capacity to sue and be sued in this Court.

303.     Defendant Dean Ellenbecker is an adult male resident of the State

of Wisconsin with the capacity to sue and be sued in this Court.

2

## IV.   ALLEGATIONS OF FACT AS TO ALL CAUSES OF ACTION

401.   Defendant Dean Ellenbecker is the president of S. D. Ellenbecker, Inc., a general contractor in the construction industry headquartered in Athens Wisconsin which employs about 45 to 50 persons.

402.   The Plaintiff, Todd Barkow, was employed as the Building and Grounds Supervisor for the Athens School District from approximately June 2011 until June 2019.

403.   Mr. Barkow's immediate supervisor was Superintendent Timothy Micke.

404.   Superintendent Micke's immediate supervisor was the Athens School Board.

405.   Mr. Barkow's salary was controlled by a series of one-year contracts, which is to say that Mr. Barkow entered into a new contract with the district for every succeeding academic year, but his continued employment did not depend on the execution of a new contract before the old one expired.

406.   If an existing contract expired before a new one was executed, the District continued Mr. Barkow's employment at his existing salary until a new contract was executed.

407.   As of the fall of 2018, Defendant Dean Ellenbecker was related to two members of the school board, Thomas Ellenbecker, who was Dean Ellenbecker's nephew, and Ken Ellenbecker, who was Dean Ellenbecker's brother.

408.     Ken Ellenbecker was the school district's building and grounds supervisor before Mr. Barkow, who was hired when Ken Ellenbecker retired.

409.     Dean Ellenbecker has disliked Mr. Barkow for years.

410.     During the Athens fair in either 2012 or 2013, in a bar called 3s, which was only open during the fair, Mr. Barkow and his wife, Tess Barkow, were talking to a group of people.

411.     During this conversation, Mr. Barkow had to use the men's room and excused himself briefly.

412.     While he was away, a man whom she did not know walked up to Tess Barkow and said, "Keep a leash on your husband."

413.     She responded, "Why?"

414.     The man said, "If I have my way, I will have him fired."

415.     Mr. Barkow returned to his wife and the man who had been speaking with her turned his back on them and resumed his conversation with the group he had been with earlier.

416.     Tess Barkow pointed out the man who had come over to talk to her and asked her husband who he was.

417.     Mr. Barkow, who recognized Dean Ellenbecker by sight, told his wife that it had been Dean Ellenbecker.

4

418.   At some point, Mrs. Barkow told her husband what had transpired, and Mr. Barkow had no idea whatsoever of the origin of Dean Ellenbecker's hostility toward him.

419.   Prior to the May 16, 2016, Athens school district regular Board of Education meeting, Superintendent Micke presented the board with a recommended contract for the 2016-2017 employment of Mr. Barkow as building and grounds supervisor.

420.   The contract included a 2.6% salary increase.

421.   The contract was approved by the board at its May 16, 2016, meeting.

422.   After the May 16, 2016 board meeting, Mr. Barkow spoke to Mr. Micke and asked him to review his salary increase in relation to increases awarded to the district's teaching staff.

423.   Mr. Micke said that he would obtain information regarding the salaries of other buildings and grounds supervisor's in the same athletic conference as the Athens school district for the purpose of determining the salary he would recommend for Mr. Barkow the following year, 2017-18.

424.   Mr. Barkow had wanted Micke to reconsider his salary for the 2016-17 academic year, and Micke refused to do this, at least prior to June 30, 2016.

425.   Mr. Barkow then asked the board to reconsider his salary for the 2016-17 academic year.

5

426.    In response to this, the school board communicated to Mr. Micke that it was concerned that Mr. Barkow had bypassed the chain of command.

427.    Mr. Micke informed the board that since Mr. Barkow had come to him first, Micke did not regard Barkow's contact with the board as bypassing the chain of command.

428.    Like Mr. Micke's, the board's determination was that Mr. Barkow's compensation level would be re-evaluated before the 2017-2018 academic year, in comparison to similar positions in other nearby school districts.

429.    One of Mr. Micke's duties as Mr. Barkow supervisor was to complete written evaluations of Mr. Barkow's job performance on an annual basis.

430.    On May 8, 2017, Mr. Micke completed a performance evaluation that required them to evaluate dozens of aspects of Mr. Barkow's job performance on a numerical scale in which the numeral 4 represented "distinguished – exceeds expectations," the numeral 3 represented "proficient – meets expectations," the numeral 2 represented "basic – needs improvement," and the numeral 1 represented "unsatisfactory – unacceptable."

431.    Mr. Micke gave Mr. Barkow a rating of four in the areas of dependability, initiative, and management, and a rating of three in the areas of interpersonal relations, leadership, and personnel. No area performance was rated below three.

432.     On May 8, 2018, Mr. Micke completed another evaluation of the aspects of Mr. Barkow's job performance and again gave him a rating of four in the areas of dependability, initiative, and management, and a rating of three in the areas of interpersonal relations, leadership, and personnel. No area performance was rated below three.

433.     On June 18, 2018, the school board approved another one-year employment contract for Mr. Barkow covering the 2018-2019 school year. This was not given to Mr. Barkow for him to sign until July 10, 2018, but Mr. Barkow's employment continued after June 30, 2018, the last day covered by his 2017-2018 contract, without interruption.

434.     In June, 2018, an Athens School District student, Tucker Westfall, died in an accident on his uncle's dairy farm.

435.     Tucker's uncle and several local contractors took it upon themselves to redo the entire school district baseball field in Tucker's honor.

436.     One of the primary contractors working on this project was Dean Ellenbecker's company.

437.     On August 8, 2018, Mr. Barkow went out to check that the sprinkler system was working for the football field.

438.     He noticed standing water between the new diamond and the school's track, and took a picture of it.

439.    On August 9, 2018, at 7:34 a.m., he emailed the picture to Thomas Ellenbecker, who at that time was a member of the Athens School District School Board, with copies to Julie Gauerke, who was the principal of the high school and middle school, Superintendent Tim Micke, Tim Krueger, who was the School Board President, and Dean Ellenbecker, with the message: "I noticed this water standing yesterday on the south side of the baseball diamond. Is there still ditching to be done? I heard that they were going to be seeded this week." Thomas Ellenbecker was not only a school board member; he also worked for REI Engineering, Inc., and in that capacity was taking the lead on the new ball diamond project, obtaining all legal permits from the State, the DNR, and the Highway Department.

440.    At 8:02 a.m., on the same day, Dean Ellenbecker sent a reply email to Mr. Barkow, with copies to the other addressees of Mr. Barkow's email, saying, "Todd this is already been taken care of. If you have questions stop and talk to Jay or Bill. I have guys there from 7 to 6 almost every day!!"

441.    As of August 9, 2018, Mr. Barkow did not believe that the standing water had been addressed, because he had just seen water standing on the area between the baseball field and the school track that morning and taken another picture.

442.    Thomas Ellenbecker sent a text message to Mr. Barkow to respond to his initial August 9 email, and said: "That's not a big issue at this time. Final grading is starting. That's when the final slopes will be established for the ditches. Thanks for the information and pic."

8

443.    At 8:44 a.m. on August 9, Mr. Barkow replied to Mr. Ellenbecker's email with copies to the other addressees in the chain, attaching the picture he'd taken that morning and writing: "Here is a pic from this morning. I do not see where anything was taken care of. No one out there working this morning to talk to. Thank you Chumo[1] for letting me know that you will be taking care of this."

444.    At 8:58 a.m., Dean Ellenbecker replied to the same set of addressees: "Todd you get out there and I will be there with Jay and discuss this. We don't [need] Chumo to show us how to make water flow. No offense Chumo, you know what I mean."

445.    Two minutes later, at 9:00 a.m. on August 9, 2018, Dean Ellenbecker emailed Mr. Barkow, with a copy only to Thomas Ellenbecker, as follows: "Todd you can stick your picture up your ass as far as I'm concerned."

446.    The same day, at 9:21 a.m., Superintendent Micke emailed Mr. Barkow to say: "Todd, thanks for looking forward. Just a favor, with all the 'volunteer time' on this project, would you just take a step back. . .  I know you mean well, and just want to keep the emotions in check by all. . . Thanks. Tim." (ellipses in original).

447.    On August 9, 2018, at 11:06 a.m., Dean Ellenbecker sent an email to School Board members Thomas Ellenbecker, Steve Janke, and Tim Krueger, with copies to Julie Gauerke and Tim Micke.

448.    This email read in part as follows:

---

[1] "Chumo" is Thomas Ellenbecker's nickname.

Chumo, I hope you didn't take it the wrong way when I told Todd, we (meaning SDE) can make flow where it needs to without his two cents and I also meant it when I told him 'he could stick his picture up his ass' we're not finished grading on that side yet. He should stop in during the day or after 4 o'clock when he's done working and talk to the guys so he know what's going instead of sending pictures of puddles to the school board!!!! As far as I'm concerned, if he's involved with the school, I won't do another project for Athens school district. I have some concrete to pour in front of the concession stand and final grading/ditching and when that's done my equipment is coming out of there and Todd can figure out how to finish it. I'm sick of him running his mouth down at happy hour about what's going on with the diamond. I had many people tell me different stories about him running his trap at the local pub. . .

449.    This email was intended to induce the school board to terminate

Todd Barkow's employment, by conveying the threat that as long as Mr. Barkow were

employed by the school district, Dean Ellenbecker and his company would not do any

more projects for the district and in fact would not finish the ball field project.

450.    Dean Ellenbecker's email had its desired effect.

451.    On Wednesday, September 26, 2018, Wausau attorney Dean

Dietrich, at the behest of the school board or some of its members, but without the input

of Superintendent Micke, met with Mr. Barkow in Micke's office.

452.    Around 10:30 a.m. Mr. Micke called Mr. Barkow on his school

phone and asked him to come to Micke's office.

453.    When Mr. Barkow went to Mr. Micke's office, only Mr. Micke and

Attorney Dean Dietrich were there.

454.    Attorney Dietrich took charge of the meeting and asked Mr.

Barkow to be seated.

455.   Mr. Dietrich proceeded to tell Mr. Barkow that he wanted Mr.

Barkow to remain calm, that he did not want any sudden outbursts from Mr. Barkow,

and that Mr. Barkow probably was not going to like what he had to say.

456.   Mr. Barkow was surprised to be treated as if he were capable of

erupting, because he had always remained calm on the job.

457.   Mr. Dietrich then proceeded to explain that the school board was

very displeased with the way Mr. Barkow had conducted himself and with his attitude.

458.   He also said that the board was displeased with Mr. Barkow

questioning board decisions and board authority.

459.   He said the board had received "several" complaints from

community members and staff members.

460.   No complaints from community members or staff members had

ever been brought to Mr. Barkow's attention in the eight years he had worked for the

school district, except for the email from Dean Ellenbecker quoted above.

461.   Mr. Dietrich then told Mr. Barkow that Mr. Barkow was being

placed on paid administrative leave until a school board meeting could be held at

which Mr. Barkow could answer the board's concerns.

462.   Mr. Dietrich then asked Mr. Barkow to turn over his keys and his

key card, which he did.

463.     Mr. Dietrich then asked Mr. Barkow if he had any questions, and Mr. Barkow responded that, without a lawyer present to represent him, he had nothing to say.

464.     Mr. Dietrich asked Mr. Micke if he had anything that he would like to say or ask, and Mr. Micke said he did not.

465.     During the entire meeting Mr. Micke did not say a single other thing.

466.     During the entire meeting Mr. Barkow did not say anything substantive. He remained calm, and did not react in any way, because after Mr. Dietrich had introduced himself as the school board's lawyer, Mr. Barkow had decided that he was not going to say or do anything without having a lawyer of his own present to represent him. Mr. Barkow did not want to say or do anything that might be used against him or prejudice his rights or interests.

467.     Mr. Micke then walked Mr. Barkow first to the maintenance room, where Mr. Barkow retrieved his lunch pail, and then out the door, where he waited for Mr. Barkow to get in his vehicle and leave. Not a word was said between Mr. Micke and Mr. Barkow during this time.

468.     Later, after Mr. Barkow had returned to work, Mr. Micke told Mr. Barkow that he'd had nothing to do with assembling any list of concerns or with placing Mr. Barkow on leave, and that he was neither aware of nor included in anything that had led up to the meeting in his office.

12

469.    On September 28, 2018, Attorney Dietrich sent Mr. Barkow an email in which he listed six concerns with Mr. Barkow's job performance, which he said had been voiced to various school board members.

470.    Attorney Dietrich's September 28, 2018, email directed Mr. Barkow to attend a meeting with the school board on October 8, 2018, which he said had been scheduled to provide Mr. Barkow with an opportunity to respond to the enumerated concerns.

471.    In response, Mr. Barkow emailed attorney Dietrich on September 29, 2018, to ask him for copies of any emails to board members expressing concerns with his job performance so that he could show them to his own lawyer.

472.    On October 1, 2018, attorney Dietrich responded to Mr. Barkow's request for copies of emails reflecting concerns with his job performance. The only email he transmitted in response to Mr. Barkow's request for such copies was Dean Ellenbecker's email of August 9, 2018, in which he said "As far as I'm concerned, if he's involved with the school, I won't do another project for Athens school district."

473.    Mr. Barkow retained counsel in the person of attorney Brian G. Formella.  Attorney Formella communicated with attorney Dietrich on Mr. Barkow's behalf in order to prepare to address those concerns enumerated by attorney Dietrich.

474.    On October 16, 2018, attorney Dietrich sent attorney Formella an email that he described as "a follow-up to our various communications regarding a

13

meeting with the School Board of the Athens School District to discuss the employment

status of Todd Barkow as Buildings and Grounds Supervisor for the School District."

476.    In that email, attorney Dietrich wrote:

The school district will hold a meeting on Wednesday, October 24 at 6:30
PM for the purpose of meeting with Mr. Barkow regarding his
employment status. This will not be a hearing but rather will be an
informal meeting where the school board will hear a presentation from
Mr. Barkow regarding his performance as buildings and grounds
supervisor. The school board will make a final decision regarding his
employment status after the presentation by Mr. Barkow.

476.    On November 7, 2018, attorney Dietrich emailed attorney Formella

a document he had prepared for the school board, and which he represented had been

approved by the school board, entitled "Notice of Performance Deficiencies and

Performance Expectations."

477.    The document informed Mr. Barkow that, "The School Board has

lost confidence in your work as Buildings and Grounds Supervisor because it does not

feel that you maintain the type of attitude that the Board expects for a manager in the

School District."

478.    The document contained a list of expectations and informed Mr.

Barkow that the school board would evaluate his interactions and his performance on a

bimonthly basis over the next seven months. It informed him that the school board

would decide whether his employment would continue beyond the expiration of his

then-current contract on June 30, 2019. The school board never conducted the bimonthly

evaluations contemplated by this document.

14

479.    The document said "You will not receive a new employment contract from the school district but rather will be advised of the school board decision regarding your continued employment in writing."

480.    This document conferred upon Mr. Barkow a property interest in the continuation of his employment beyond the 2018-2019 school year so long as he fulfilled the conditions imposed on him by the document.

481.    Mr. Barkow fulfilled all of the conditions imposed on him by the document.

482.    On April 8, 2019, another attorney from attorney Dietrich's law firm sent a letter via email to attorney Formella that said in part, "This letter serves as notice that the Athens School District will not renew Mr. Barkow's contract at the end of this current school year. Pursuant to the terms of Mr. Barkow's contract, his employment shall be terminated effective June 30, 2019."

483.    This letter did not say that the decision it reported had been made at any particular meeting of the school board or any other school district body.

484.    In fact, as of the date of the April 8, 2019, letter, the decision not to renew Mr. Barkow's contract beyond the end of the 2018-2019 school year had not been made at any meeting of the Athens School District school board.

485.    In fact, neither the  Athens School District school board nor any other Athens School District official or body had even made a determination as to

15

whether Mr. Barkow had fulfilled the conditions in the November 7, 2018, Notice of Performance Deficiencies and Performance Expectations.

486.    Mr. Barkow was never given notice that the matter of whether he had fulfilled the conditions in the November 7, 2018, Notice of Performance Deficiencies and Performance Expectations, or the matter of whether his employment should be terminated was being considered by the District prior to the transmittal of the April 8, 2019, letter.

487.    Mr. Barkow was never given any opportunity to be heard as to whether he had fulfilled the conditions in the November 7, 2018, Notice of Performance Deficiencies and Performance Expectations, or as to whether his employment should be terminated prior to the transmittal of the April 8, 2019, letter.

488.    If, prior to the transmittal of the April 8, 2019, letter, Mr. Barkow had been given notice and an opportunity to be heard as to whether he had fulfilled the conditions in the November 7, 2018, Notice of Performance Deficiencies and Performance Expectations, and as to whether his employment should be terminated prior to the transmittal of the April 8, 2019, letter, he could have proven through the testimony of his immediate supervisor, Superintendent Timothy Micke, and other evidence, that he had fulfilled each and every one of the conditions in the November 7, 2018, Notice of Performance Deficiencies and Performance Expectations, and that his employment should not be terminated.

489.     If, prior to the transmittal of the April 8, 2019, letter, Mr. Barkow's evidence had been heard by an impartial decision-maker, that decision-maker would have found that he had fulfilled each and every one of the conditions in the November 7, 2018, Notice of Performance Deficiencies and Performance Expectations, and that his employment should not be terminated.

490.     On May 30, 2019, the Athens School District school board held a special meeting and voted to not renew Plaintiff Barkow's contract for the 2019-2020 school year.

491.     Mr. Barkow was never given notice that the matter of whether he had fulfilled the conditions in the November 7, 2018, Notice of Performance Deficiencies and Performance Expectations, or the matter of whether his employment should be terminated was being considered by the District at the May 30, 2019, special meeting of the Athens School District school board.

492.     Neither at nor prior to the May 30, 2019, special meeting of the Athens School District school board was Mr. Barkow given any opportunity to be heard as to whether he had fulfilled the conditions in the November 7, 2018, Notice of Performance Deficiencies and Performance Expectations, or as to whether his employment should be terminated.

493.     If, at the May 30, 2019, special meeting of the Athens School District school board, Mr. Barkow had been given notice and an opportunity to be heard as to whether he had fulfilled the conditions in the November 7, 2018, Notice of Performance

17

Deficiencies and Performance Expectations, and as to whether his employment should be terminated at the May 30, 2019, special meeting of the Athens School District school board, he could have proven through the testimony of his immediate supervisor, Superintendent Timothy Micke, and other evidence, that he had fulfilled each and every one of the conditions in the November 7, 2018, Notice of Performance Deficiencies and Performance Expectations, and that his employment should not be terminated.

494.    If, at the May 30, 2019, special meeting of the Athens School District school board, or at any other time, Mr. Barkow's evidence had been heard by an impartial decision-maker, that decision-maker would have found that he had fulfilled each and every one of the conditions in the November 7, 2018, Notice of Performance Deficiencies and Performance Expectations, and that his employment should not be terminated.

495.    Mr. Barkow's employment was terminated by the Defendant Athens School District because he was not a member or close friend of the Ellenbecker family and because he had fallen afoul of Dean Ellenbecker.

496.    The Athens School District's decision to terminate Mr. Barkow's employment was caused in substantial part by Dean Ellenbecker's efforts to secure that result, which were in turn motivated by his own personal hostility toward Mr. Barkow.

## V.     BASES OF LIABILITY

### A.     Federal Civil Rights Claims

#### 1.     The Civil Rights Act of 1871, 42 U.S.C. Sec. 1983.

##### a.     Due Process.

501.    The Defendant School District of Athens is liable to Plaintiff Barkow pursuant to The Civil Rights Act of 1871, 42 U.S.C. Sec. 1983, because it terminated his employment in violation of his right to be free from deprivations of property without due process of law conferred by the Fourteenth Amendment to the United States Constitution.

##### b.     Equal Protection of the Laws

502.    The Defendant School District of Athens is liable to Plaintiff Barkow pursuant to The Civil Rights Act of 1871, 42 U.S.C. Sec. 1983, because it terminated his employment in violation of his right to equal protection of the laws conferred by the Fourteenth Amendment to the United States Constitution.

### B.     State Law Claim.

##### a.     Tortious Interference with Contractual Relationship

503.    Defendant Ellenbecker tortiously interfered with Mr. Barkow's contractual employment relationship with the Athens School District when he caused the district to terminate Mr. Barkow's employment.

## VI.     DAMAGES and EQUITY

### A.     Compensatory Damages

601.     By virtue of the unlawful actions alleged above, the Plaintiff has suffered lost past and future earning capacity, emotional distress, and injury to his reputation, for which he seeks awards of compensatory damages in amounts deemed just by the Court.

### B.     Punitive Damages.

602.     Because the wrongful acts of the individual Defendant were carried out with malice and with reckless disregard for the Plaintiff's fundamental rights, the Plaintiff also seeks an award of punitive damages against the individual Defendant to deter him and others similarly situated from committing similar wrongful acts in the future.

### C.     Equity.

603.     Because the Plaintiff has no direct, adequate, and speedy remedy for some of his injuries, the Plaintiff invokes this Court's equitable authority to award appropriate injunctive relief in order that he may be made entirely whole.

## VII.     CONDITIONS PRECEDENT

701.     All conditions precedent to this action within the meaning of Rule 9(c), Fed. R. Civ. Pro., have been performed or have otherwise occurred.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, Todd Barkow, prays the Court to grant him a

judgment against the Defendants awarding him the full amount of his damages

together with interest, costs and attorney's fees and such other and further relief as the

Court deems just.

Dated this Monday, November 23, 2020.

Respectfully submitted,

TODD A. BARKOW,

Plaintiff,

By

THE JEFF SCOTT OLSON LAW FIRM, S.C.
JEFF SCOTT OLSON
State Bar No. 1016284
131 W. Wilson St., Suite 1200
Madison, WI 53703
Phone:          (608) 283-6001
Facsimile:     (608) 283-0945
E-mail:         jsolson@scofflaw.com

/s/ Jeff Scott Olson

_____

Jeff Scott Olson
ATTORNEYS FOR PLAINTIFF